South Covington Dist. v. Kenton Water Co.
Kenton Water Co. v. Town of Latonia.

CASE 56—ACTION BY KENTON WATER COMPANY AGAINST SOUTH COV-
INGTON DISTRICT, &C., TO RECOVER BALANCE DUE FOR WATER FUR-
NISHED.—JAN. 29.

# South Covington Dist. v. Kenton Water Co.

# Kenton Water Co. v. Town of Latonia.

### APPEAL FROM KENTON CIRCUIT COURT.

FROM THE JUDGMENT SAID DISTRICT AND PLAINTIFF APPEAL. REVERSED
IN PART.

CIVIL DISTRICTS—CONTRACTS FOR WATER FOR FIRE PROTECTION—LIA-
BILITY FOR WATER FURNISHED.

Held:   1. Under 2 Acts 1883-84, p. 1318, c. 1494, establishing cer-
tain agricultural land as a separate justice and election dis-
trict, providing for the election of two justices and a consta-
ble therein, placing the government thereof in a board of trus-
tees, to be elected, and empowering them to pass such by-laws
for the preservation of the health, good government, and police
protection of the persons and property of the district as they
deem proper, and to provide for their observance by penalties
to be enforced before a justice, the fines collected to be used
in improving the public roads, and giving them the manage-
ment of such roads, and providing for a tax for keeping them
in repair, but authorizing taxes for no other purpose, and pro-
viding no other means of revenue; and Act April 14, 1888 (3
Acts 1887-88, p. 170, c. 1071), amending such charter, by giving
the trustees authority to require licenses for saloons, bowl-
ing alleys, billiard tables, and the like to be taken out, and
to assess taxes for payment of peace officers—the district trus-
tees have no authority to contract for water for fire protection.
2. A civil district having no power to contract for water for fire
protection is not liable for water furnished for such purpose.

TISDALE & GRAY, FOR APPELLANTS.

> Our contention is:
> 1. That under the acts of the Legislature and the ruling of
> this court in the several cases herein cited the South Coving-

ton District is a quasi municipal corporation with the same powers and privileges, and no more than it has had since the amendment of April 14, 1888.

2. If we assume for sake of argument that the contract sued on is valid, then the judgment of date June 27, 1901, appealed from is erroneous, because it is not sustained by the evidence.

3. Still conceding, for the sake of argument, that plaintiff had a valid contract with the South Covington District, we contend that this second judgment is not only erroneous but void.

4. Thus far, we have assumed that plaintiff (appellee) had a valid contract, but we contend that under the law and the former decisions of this court, said district had no authority to make the contract sued on and therefore said contract is void.

## LIST OF AUTHORITIES CITED BY APPELLANT.

Present Constitution of Kentucky, secs. 157, 158, 162, 164, 180; Act of May 12, 1884, Acts 1883-4, vol. 2, p. 1318, &c.; Amendatory Act, April 14, 1888, Acts 1887-8, vol. 3, p. 170; Stephens, &c. v. Felton, &c., 18 Ky. Law Rep., p. 248; Town of Latonia v. Hopkins, et al., 20 Ky. Law Rep., p. 620; City of Covington v. Highlands District, 24 Ky. Law Rep., p. 433; Judge Pryor's opinion reinstating injunction in the case of Keller v. Powell, p. 19 of the Record in Stephens v. Felton; Board of Education of Covington, Ky. v. Board of Trustees of Public Library of Covington, Ky., 24 Ky. Law Rep., p. 98; Trustees of the Town of Martinsburg v. Whitt, &c., 10 Ky. Law Rep., p. 400; Sedgwick on Stat. & Const. Law, p. 466; Knipper v. City of Louisville, 7 Bush, p. 603; Caldwell, &c. v. Rupert, &c., 10 Bush, p. 182; Murray, &c. v. Tucker, &c., 10 Bush, p. 243; Eason v. Board of Trustees of Lancaster, 12 Ky. Law Rep., p. 798; Henderson, &c. v. City of Covington, &c., 14 Bush, p. 314; Patton, &c. v. Stephens, &c., 14 Bush, p. 326; Trustees of Bellevue v. Hohn, &c., 82 Ky., p. 4; Byrne, Solicitor v. City of Covington, 15 Ky. Law Rep., p. 34; City Council of Richmond v. Powell, 16 Ky. Law Rep., p. 174; Beard v. City of Hopkinsville, 15 Ky. Law Rep., p. 757; Knipper v. City of Covington, 22 Ky. Law Rep., p. 676.

H. D. GREGORY, ATTORNEY FOR APPELLEE.

We contend:

1. That South Covington District was not a *quasi* corporation,

.South Covington Dist. v. Kenton Water Co.
Kenton Water Co. v. Town of Latonia.

but was *incorporated* by the Legislature for *governmental pur-poses*, "and the inhabitants thereof were created a *body politic* and *corporate*" in the language of its charter.

2. Said district as an incorporated taxing district was author-ized to grant franchises or privileges.

3. The board of trustees of the South Covington District was authorized by its charter to grant a franchise and enter into a contract with appellee.

4. It is not necessary in this case for the court to pass upon the validity of the franchise and contract.

5. Appeal of appellee v. Town of Latonia. It is well set-tled law in this country that the change of municipal bodies from one class to another, or the annexation of one to another, or the dissolution of one can not destroy or affect the liability to third persons whose rights in reference thereto are based upon contract.

6. We urge that the justice and equity of this case is with the water company, which, in good faith invested its capital and furnished its fire service and water supply which the appel-lant corporation has received the use and benefit of, and should pay for.

### AUTHORITIES.

Act of May 12, 1884, Acts 1883-4, vol. 2, p. 1318; Present Constitution of Ky., secs. 163, 164, 59; M. Brown, &c. v. Daples-sis and City of New Orleans, 14 La., 844; Kentucky Statutes, secs. 2783, 3058, subsecs. 25, 3068, 3290, subsecs. 16, 35, sec. 3490, subsecs. 6, 8, 25, secs. 3637, 3636, 3699, 3704, subsec. 7; An-gel & Ames on Corporations, sec. 271; Dillon on Munic. Corp., secs. 13, 97, 372; 15 Am. & Eng. Ency. of Law, 1054, 1040, 1170; Wadleigh y. Gilman, 12 Maine, 403; W. U. Tel. Co. v. Guern-sey, &c., 46 Mo., 134; Ferrneback v. Turner, 86 Mo., 416; An-drews v. Nat. Foundry, &c., 61 Fed., 787; Argenti v. San Fran-cisco, 16 Cal., 255; 4 Ky. Law Rep., 635; Nicholasville Water Co. v. Nicholasville, 18 Ky. Law Rep., 592; Frankfort Bridge Co. v. Frankfort, 18 B. Mon., 41; Lee v. Flemingsburg, 8 Dana, 28; Carter County v. David Sinton, U. S. Supreme Court Rep., McKee v. Garrard County, 11 Bush, 234; Grand Rapids v. Hy-draulic Co., 66 Mich., 612; University v. Board of Education, 4 Mich., 213 Bethel v. Booth & Co., 24 Ky. Law Rep., 2024.

ORLANDO P. SCHMIDT, FOR APPELLEE, THE TOWN OF LATONIA.

### SUMMARY.

1. The town of Latonia did not become liable for the antece-

492        KENTUCKY REPORTS.        [Vol. 117

South Covington Dist. v. Kenton Water Co.
Kenton Water Co. v. Town of Latonia.

dent debts of the South Covington District by annexing certain portions of territory lying within said district.

2. Power to pass by-laws, rules and regulations for the health, good government and police protection of the persons and property of the district, and provide for their observance by adequate penalties to be enforced before a justice of the peace, can not be construed as a power to grant franchises, or to make contracts of this nature, or to permit private corporations to lay water pipes and erect fire plugs in the public streets of the district.

3. The South Covington District had no power to raise money or levy taxes for any such purposes.

4. Under the present Constitution a tax levied for one purpose can not be applied to any other.

5. A town can not legally contract a debt if it has no funds, and no means of raising funds, to pay it, much less can a mere taxing district do so.

6. Neither a municipal corporation nor its officers can do any act or make any contract, or incur any liability not authorized by its charter.

7. The privilege claimed by the Kenton Water Company, is one in which the public has an interest, and can not be exercised without authority derived from the sovereign power.

8. If the South Covington District had been a town of the sixth class, invested with all the powers incident to towns of that class, it could not, under section 157 of the present Constitution (then in force) have contracted the indebtedness sought to be enforced in this action, without the assent of two-thirds of the voters thereof, voting at an election held for that purpose.

9. Conceding for the sake of argument only, that the South Covington District, which has been defined by this court to be a "civil district and voting precinct," but in no sense a town or city, had actually granted the franchise to appellant, had actually made a valid contract with appellant which could have been enforced against said district, the town of Latonia did not either by its original establishment or by its subsequent annexations of territory, carried out of said district, assume said franchise or contract.

10. Under section 164 of the present Constitution providing how franchises may be granted, the town of Latonia could not assume a franchise by implication or ratification; it could only do so in the mode pointed out by law.

11. If plaintiff had actually obtained a valid franchise from

this civil district, it would have been subject to the general laws of the State authorizing the establishment of towns and the annexation of adjoining territory by towns, and therefore liable to be defeated at any time by such contingency, it being a well recognized principle of law, that all contracts must be read as if the law of the land had been copied therein verbatim.

12. The contract sued on is an entire contract and therefore not severable.

## LIST OF AUTHORITIES.

Act of May 12, 1884 incorporating South Covington District, secs. 3666, 3667, Kentucky Statutes; Stephens v. Felton, 18 Ky. Law Rep., 248; Peter Keller v. Charles G. Mason, 18 Ky. Law Rep., 248; East Tennessee Telephone Co. v. City of Russellville, 106 Ky., 669, sec. 166 Present Constitution; Patton v. Stephens, 14 Bush, 327; Henderson v. City of Covington, 14 Bush, 314; sec. 180 Present Constitution; Board of Education of Covington v. Public Library of Covington, 24 Ky. Law Rep., 98; Trustees of Martinsburg v. Whitt, 10 Ky. Law Rep., 400; Caldwell v. Rupert, 10 Bush, 182; Murray v. Tucker, 19 Bush, 243; Bellevue v. Hahn, 82 Ky., 4; Eason v. Lancaster, 12 Ky. Law Rep., 798; Commonwealth v. City of Frankfort, 13 Bush, 189; sec. 157 Present Constitution; Richmond v. Powell, 16 Ky. Law Rep., 174; Beard v. Hopkinsville, 15 Ky. Law Rep., 757; Knipper v. City of Covington, 22 Ky. Law Rep., 676, sec. 164, Present Constitution, sec. 3, Bill of Rights.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING IN PART.

The South Covington District embraces about four square miles of territory.    It was incorporated by an act of the Legislature approved May 12, 1884, (2 Acts 1883-84, p. 1318, c. 1494), as a magisterial district.   On April 3, 1893, the trustees of the district granted to the Kenton Water Company the franchise to lay water pipes in the streets of the district, and to furnish fire hydrants thereon, and water to the citizens; also to the district in case of fire.    For each fire hydrant they agreed to pay the water company $45 a year.    The fire hydrants were put in from time to time, and

494 KENTUCKY REPORTS. [Vol. 117

South Covington Dist. v. Kenton Water Co.
Kenton Water Co. v. Town of Latonia.

the rent on them up to October 12, 1899, amounted to $2,819. Of this the trustees had paid $1,335, leaving a balance due of $1,484, to recover to which this suit was brought. When the contract was made a town had grown up on a part of the district near the Latonia race track, and was called "Milldale." In the classification of the towns of the State Milldale, Kenton county, was designated a town of the fifth class; but in Stephens v. Felton (99 Ky., 395, 18 R., 248) 35 S. W., 1116, it was held that the territory which included many farms was not incorporated as a town by the original act, but only as a civil district, and that the Legislature did not create a town or incorporate one by the act classifying the towns of the State. After this the town of Latonia was incorporated, and its limits have been since extended until something like three-fourths in value of the property in the South Covington District is now within the town of Latonia, and all the fire plugs for the rent of which the suit was brought are within the town. Both the town of Latonia and the South Covington District were made defendants to the suit, and, judgment having been rendered against the South Covington District and the action dismissed as to the town of Latonia, both the district and the water company appeal.

The first question arising is whether, under the charter, the trustees of the district had authority to make the contract sued on. The charter, so far as material, is as follows:

"That so much of the county of Kenton as may be embraced within the following boundary, to wit, (here follows the boundary), is hereby established as a separate justice and election district in said county; and the inhabitants thereof are created a body politic and corporate, by the name

and style of the 'South Covington District,' in Kenton county, Kentucky, for the purposes hereinafter mentioned.

"(2)    Two justices of the peace and one constable shall be elected for said district by the qualified voters thereof, at the times and in the manner and having the qualifications required by the Constitution and laws of this common-wealth; and the elections for said district shall be held at a suitable place to be selected by the trustees of said district; said voting place may be chosen by the trustees and notice thereof shall be given by posting written notices in five or more public places in said district for ten days before said election is to be held.

"(3)    The government of said corporation shall be con-fined to a board of five trustees, having the qualifications of owners of real estate and resident within said district, who shall be chosen once in two years on the first Monday in August by the qualified voters within said district, and who shall serve two years and until their successors are elected and qualified; the first election hereunder for trustees to be in August, 1886.

"(4)    Said trustees may select one of their number chair-man, who shall preside at all their meetings; and in case of his absence, they may select a chairman pro tem.    They shall select a clerk, treasurer, and other corporation officers, and appoint policemen for the place and remove same at discretion and appoint others in their stead.    They may meet at such times and places as they deem proper or as the chairman may appoint, upon petition of two of the board; and a majority of those elected shall constitute a quorum to do business; they shall keep a record of their proceedings. They may pass such by-laws, rules and regulations for the preservation of the health, good government, and police pro-

tection of the persons and property of the district as they may deem proper, not in conflict or inconsistent with the Constitution or laws of the State, and provide for their observance by adequate penalties for a violation of the same, to be enforced before a justice of the peace; and all fines or forfeitures therein collected shall be paid to the treasurer of the board, to be used in improving the public thoroughfares within the said district. They may make regulations to prevent stock of any kind from running at large in said district, provided they think it necessary; and may provide a pound for impounding stock that may be taken up, and the cost of impounding shall be a lien on the stock. They shall have the management of the public roads in said district, except turnpike roads operated by companies running through said district, and shall keep the same in good repair, and for that purpose a tax of ten cents on the one hundred dollars of all real estate in said district, which is to include the six cents road tax in said district at the valuation put thereon by the assessor of Kenton county. They may grade and macadamize either with rock or gravel any public road passing through or into said district within the limits thereof. They may pay a collector of the tax herein levied and fix his compensation," etc.

See 2 Acts 1883-84, p. 1318, c. 1494.

The remaining sections of the act provide that the tax referred to may be collected by suit, and when it shall be payable; that actions shall be prosecuted or defended in the name of the trustees of the corporation; that all police shall be sworn as constables, and that constables and justices of the peace in the district shall exercise like powers and receive the same fees as constables and justices in Kenton county; that at all elections the qualified voters residing in the district may

vote at the voting places therein, but not elsewhere; and that the trustees may require persons residing in the district to work on the roads, and have like remedies against those failing to work as are given to surveyors of public highways. It is insisted for the water company that the power to pass such by-laws, rules, and regulations for the preservation of the health, good government, and police protection of the persons and property of the district as they deem proper empowered them to provide by contract for water or fire protection.    On the other hand, it is insisted for the district that the latter part of the section shows that such by-laws, rules, and regulations are referred to as may be enforced by adequate penalties before a justice of the peace.    On behalf of the water company we are referred to authorities holding that a city may contract for water under a power to pass ordinances respecting the police and to preserve health.    1 Dillon on Municipal Corporations, section 146. But this rule can not be applied to a civil district where the trustees are given so limited power as in the act quoted.    In construing the act we must bear in mind the condition of things under which it passed.    It was an agricultural district.    Two justices of the peace and one constable were to be elected for it.    The power conferred upon the trustees as to the levy of taxes is limited to a tax of ten cents on the one hundred dollars worth of real estate in the district, and this is to be applied to improving and keeping in repair the roads.    They are not allowed to levy taxes for any other purpose, and no other means of revenue is provided.    The powers of the trustees were apparently granted to provide police protection, prevent stock from running at large, and improve the roads of the

498        KENTUCKY REPORTS.        [Vol. 117

South Covington Dist. v. Kenton Water Co.
Kenton Water Co. v. Town of Latonia.

district.    The district was at that time entirely unsuited
for a general system of water mains of fire plugs, and to
have provided therefor at the common expense would have
been unjust to the larger .part of the property owners, for
the fire plugs in contest are located on a small portion of
the district in area.    The provision of the charter that the
trustees may pass such by-laws, rules, and regulations for the
preservation of health, good government, and police pro-
tection of the persons and property of the district as they
may deem proper, and provide for their observance by ade-
quate penalties to be enforced before a justice of the peace,
must be read in connection with the other provisions of the
charter defining the powers of the trustees, and in the light
of the circumstances to provide for which the charter was
enacted.    As the Legislature did not contemplate incor-
porating a town, but only intended to create a civil district,
and conferred upon the trustees no power to raise revenue
and carry out a contract for fire protection, the power to
pass by-laws for the preservation of health of the district did
not warrant the contract in question, and under the original
charter the trustees were not authorized to make the contract.

By an act approved April 14, 1888 (see 3 Acts 1887-88,
p. 170, c. 1071), the charter was amended.    By the amend-
ment the trustees were given authority to require saloons,
bowling alleys, billiard tables, and the like to take out a
license, and fix the cost thereof; also to have the sidewalks
of the streets and roads improved at the expense of the own-
ers of the property fronting thereon, and to assess and collect
a tax of five cents on the one hundred dollars on all real es-
tate in the district not used for agricultural purposes, to be ap-
plied by the trustees in the payment of police or other peace
officers in the district. In respect to the power to pass by-laws

for the health and good government of the district the amend-ment added nothing to the powers of the trustees under the original charter.    It was simply passed for the purposes named, and left the trustees with the same powers as to by-laws and ordinances as they had before, except as to the matters referred to.    They had no more authority after this amendment was passed than before to make an ordinance for fire protection, for they had under their charter no other powers than those conferred by it, and the amendment did not enlarge their powers except as to the licensing of saloons, the construction of sidewalks, and the five-cent tax to pay the police officers.    We therefore conclude that the district trustees were without authority to make the contract in question.

But it is insisted for the water company that, although the trustees had no authority to make the contract, still the district received the benefit of it, and must pay therefor to the extent that it has assets; and in support of this we are referred to the case of Nicholasville Water Co. v. Town of Nicholasville (18 R., 592) 36 S. W., 549, 38 S. W., 430, and the authorities therein cited.    The distinction between this case and that is apparent.    There the town had authority to contract for a water supply.    Although the contract was not legally made, still the city was required to pay for what it had received under it on *quantum meruit*.    To the same effect are the other authorities cited.    But here the district was without authority to contract for a water supply.    To hold it liable for what it has received would be to make it pay for something which it had no power to buy.    Persons who deal with public corporations are charged with notice of their power, and the money of the people of the district can not be misappropriated because the trustees made a

contract they had no authority to make, and to apply the money of the district to a purpose not warranted by the charter would be to misapply it.

In Dillon on Municipal Corporations, section 457, it is said: "The general principle of law is settled beyond controversy that the agents, officers, or even city council, of a municipal corporation can not bind the corporation by any contract which is beyond the scope of its powers, or, entirely foreign to the purposes of the corporation, or which (not being legislatively authorized) is against public policy. This doctrine grows out of the nature of such institutions, and rests upon reasonable and solid grounds. The inhabitants are the corporators. The officers are but the public agents of the corporation. The duties and powers of the officers or public agents of the corporation are prescribed by statute or charter, which all persons not only may know, but are bound to know. The opposite doctrine would be fraught with such danger and accompanied with such abuse that it would soon end in the ruin of municipalities, or be legislatively overthrown. . . . It results from this doctrine that contracts not authorized by the charter or by other legislative act—that is, not within the scope of the powers of the corporation under any circumstances—are void, and in actions thereon the corporation may successfully interpose the plea of *ultra vires* setting up as a defense its own want of power under its charter or constituent statute to enter into the contract." Further on, in sections 459, 460, the question of the liability of the corporation upon an implied promise is discussed, and it is said that this principle applies to cases where the money or property of another is received under circumstances which impose an obligation upon the municipality to do justice with respect thereto. To

same effect, see 1 Smith on Municipal Corporations, sections 227, 663.    In the case before us there can be no implied liability on the part of the district to pay for the water received, because it had no power under the charter to take any action in regard to a water supply, and its receiving the water was without its corporate powers.    To hold it liable for water which it received would be to impose an implied liability upon it for an act which it had no power to do.  This can not be done.

Judgment reversed, and cause remanded, with directions to dismiss the petition.    The judgment in favor of the town of Latonia is affirmed.

Petition for re-hearing by appellee Water Company overruled.